KAREN P. HEWITT
United States Attorney
CALEB E. MASON
Assistant U.S. Attorney
California State Bar No. 246653
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5956
caleb.mason@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08cr1602DMS |
| Plaintiff, | Date: July 21, 2008<br>Time: 11 a.m. |
| v. | **GOVERNMENT'S TRIAL MEMORANDUM** |
| MICHAEL DOUGLAS MOORE, | |
| Defendant | |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, Caleb E. Mason, Assistant United States Attorney, and Paul S. Cook, Assistant United States Attorney, respectfully submits the following Trial Memorandum.

**I**

**STATEMENT OF THE CASE**

**A.   CHARGES**

On May 15, 2008, defendant Michael Douglas Moore ("Defendant") executed a waiver of indictment, and was charged by Information with one count of importation of marijuana in violation of 21 U.S.C. sections 952 and 960. On July 17, 2008, a federal grand jury in the Southern District of California returned a two-count Indictment charging Defendant with: (i) importing approximately 51.03 kilograms

(112.26 pounds) of marijuana into the United States in violation of 21 U.S.C. sections 952 and 960; and (ii) possessing approximately 51.03 kilograms (112.26 pounds) of marijuana with intent to distribute in violation of 21 U.S.C. Section 841(a)(1).  Defendant is scheduled to be arraigned on the indictment on July 18, 2008.

**B.    TRIAL STATUS**

Trial is scheduled for Monday, July 21, 2008, at 11:00 a.m. before the Honorable Judge Dana M. Sabraw.  The United States anticipates that its case-in-chief will last two days.  The court has set a motion hearing, in the alternative, for August 24, 2008.  The defense has not yet filed any motions.

**C.    STATUS OF COUNSEL**

Defendant is represented by John Ellis, Esq., Federal Defenders of San Diego, Inc., appointed counsel.

**D.    CUSTODY STATUS**

Defendant is not in custody.  On April 21, 2008, he was released on a $10,000 bond, secured by his own signature, by order of United States Magistrate Judge Peter C. Lewis.

**E.    INTERPRETER**

The United States does not need an interpreter for any of its witnesses.

**F.    JURY WAIVER**

Defendant has not waived trial by jury.

**G.    PRE-TRIAL MOTIONS**

No motions have been filed.

**H.    STIPULATIONS**

The parties have not yet entered into any stipulations in this case.

**I.   DISCOVERY**

The United States is complying with its discovery obligations. Defendant has not provided reciprocal discovery.

**II**

**STATEMENT OF FACTS**

**A.   DEFENDANT'S APPREHENSION**

**1.   Primary Inspection**

On April 18, 2008, at approximately 3 p.m., Defendant entered the United States at the Andrade Port of Entry as the driver and sole occupant of a 1995 bronze-colored Nissan Pathfinder bearing California licence plates. During primary inspection, Customs and Border Protection Officer (CBPO) James Williams noticed that Defendant was very talkative and appeared nervous. Defendant made a negative declaration. He stated that he did not want to go to Mexico and "just wanted to leave the area." Officer Williams referred Defendant and the vehicle to secondary.

**2.   Secondary Inspection**

In the secondary lot, Officer Sara Jimenez requested that Officer Michael Medley screen the vehicle with his narcotics detector dog, "Blackjack." Officer Medley conducted the screening, and the dog alerted to the rear of the vehicle. Upon closer inspection, Officers Jimenez and Medley discovered a total of 24 packages concealed inside all four tires of the vehicle. One of the packages was probed and a sample of a green leafy substance was obtained which field tested positive for marijuana. The 24 packages had a combined weight of approximately 51.03 kilograms (112.26 pounds).

**B.   DEFENDANT'S STATEMENT**

    Defendant was advised of his Miranda rights and waived them.  He made a statement which was witnessed by Special Agents Enrique Torregrosa and Lance Swanson of Immigration and Customs Enforcement (ICE).  The statement was not recorded because recording devices were temporarily unavailable at the Andrade POE due to ongoing remodeling and construction.

    Defendant stated that he lived in Downey, California, and that a recent back injury prevented him from working.  His next-door neighbor, one Jorge, told him about an opportunity to make $3000 driving a load of marijuana from Andrade to Downey.  He accompanied Jorge to Mexicali in Jorge's vehicle, where he was introduced to one "Cooper" or "Cuba," who was the supplier of the marijuana.

    Cooper supplied the load vehicle, the 1995 Pathfinder.  Defendant observed him driving it when he and Jorge arrived at Cooper's house. Cooper and Jorge took the vehicle from the house and brought it back freshly washed and with new tires. Defendant noticed the new tires because they were racing tires, as opposed the stock tires that had been on the Pathfinder when he had previously observed it.  Cooper told Defendant that he wanted him to cross the marijuana into the United States, and wanted him to bring a female passenger with him as a decoy.  Defendant refused to take the passenger.

    Defendant agreed to cross the vehicle for $3000.  His instructions were to drive to Downey and then call Jorge, who would pay him.  Jorge crossed directly ahead of Defendant at the POE. Defendant knew the contraband was in the tires because the vehicle handled poorly when he drove it.

    After Defendant's interview was completed, the ICE agents obtained a portable recording device.  While Defendant was being

1  transported from the POE to the Imperial County Jail, he made a series
2  of statements that were recorded by ICE Special Agent Lance Swanson.
3  Agent Swanson re-Mirandized Defendant before asking him any questions.
4  Defendant reiterated that he understood his rights and wanted to
5  cooperate.  In the statement, he reiterated that he had come Mexicali,
6  with his neighbor Jorge, to make $3000 driving a load of marijuana to
7  Downey, CA.  He reiterated that he knew there was marijuana in the
8  vehicle both because he had agreed to drive a load of marijuana and
9  because the vehicle was very difficult to drive due to the contraband
10 in the tires.

**C.    DEFENDANT'S CRIMINAL HISTORY**

Defendant does not have any convictions of which the United States is aware.

### III

### WITNESSES

The Government reserves the right to add, omit, substitute or change the order of witnesses.  Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Customs and Border Protection Officer James Williams
2. Customs and Border Protection Officer Michael Medley
3. Immigration and Customs Enforcement Special Agent Enrique Torregrosa
4. Immigration and Customs Enforcement Special Agent Lance Swanson
5. Immigration and Customs Enforcement Special Agent Vincent McDonald (value expert)

    6.    Ramona Sanderson, DEA Forensic Chemist

## IV

## EXHIBIT LIST

The Government will provide a final exhibit list on the morning of trial. Presently, the Government intends to offer into evidence the following:

    1.    Photographs of Port of Entry

    2.    Photographs of Vehicle

    3.    Value Chart (Demonstrative Purposes Only)

    4.    Custody Receipt for Seized Property or Evidence

    5.    DEA-7 Form

    6.    Photographs of the marijuana recovered from the vehicle

    7.    The actual marijuana recovered from the vehicle

## V

## PERTINENT LAW

**A.**     **ELEMENTS OF THE CHARGED OFFENSES**

    1.    <u>Title 21, United States Code Sections 952 & 960</u>

The elements for the offense of importing Marijuana are:

    a.    Defendant intentionally brought marijuana into the United States; and

    b.    Defendant knew that it was marijuana or some other prohibited drug.

9th Cir. Crim. Jury Instruction 9.27 (2003).

    2.    <u>Title 21, United States Code, Section 841(a)(1)</u>

The elements of the offense of possessing marijuana with the intent to distribute are:

    a.    Defendant knowingly possessed marijuana or some other prohibited drug in a measurable or detectable amount; and

    b. Defendant possessed marijuana with the intent to deliver it to another person.

It does not matter whether a defendant knew that the substance was marijuana. It is sufficient that a defendant knew that it was some kind of prohibited drug. *See* 9th Cir. Crim. Jury Instruction 9.13 (2003). With regard to possession, the United States notes that possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. *See* <u>United States v. Magallon-Jimenez</u>, 219 F.3d 1109, 1112-1113 (9th Cir. 2000). Moreover, a defendant's mere possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. <u>See</u> <u>United States v. Diaz Cardenas</u>, 351 F.3d 404, 407 (9th Cir. 2003) (holding that jury could infer knowledge when an individual is the driver and sole occupant of a vehicle containing 9.48 pounds of methamphetamine (4.31 kilograms) and 17.65 pounds of cocaine (8.02 kilograms) concealed in the air bag of the vehicle); <u>United States v. Sanchez-Lopez</u>, 879 F.2d 541, 555 (9th Cir. 1989) (finding 2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute and noting that a secret compartment within a vehicle used to conceal illegal substances can raise an inference concerning knowledge of the substance).

Knowledge may also be proved by reasonable inferences from the high street value of the narcotics. *See* <u>United States v. Ogbuehi</u>, 18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation omitted); <u>United States v. Golden</u>, 532 F.2d 1244, 1247 (9th Cir.1976) (holding that "value of the heroin found in the bags was relevant to both appellants' knowledge of the

1 presence of the heroin and intent to distribute"); Gaylor v. United
2 States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the selling
3 price of cocaine was relevant to issue of knowledge, since it tended
4 to refute "the possibility that a stranger could have placed such a
5 valuable cargo in a vehicle in the hope that the vehicle could be
6 followed and the cocaine later recovered in the United States").

7 With regard to distribution/delivery, the United States may prove
8 the "intent to deliver" element based on the following: a large
9 quantity of contraband (United States v. Diaz Cardenas, 351 F.3d at
10 407); the manner in which the controlled substance was packaged
11 (United States v. Glenn, 667 F.2d 1269, 1292 (9th Cir. 1982)); and the
12 street value of the narcotics (United States v. Davila-Escovedo, 36
13 F.3d 840, 843 (9th Cir. 1994)); United States v. Savinovich, 845 F.2d
14 834, 838 (9th Cir. 1988) (evidence of $100,000 street value of
15 cocaine was relevant to proving defendant's intent to distribute);
16 United States v. Ramirez-Rodriguez, 552 F.2d 883, 885 (9th Cir. 1977)
17 (evidence of resale value of drug probative of intent to distribute).

18 **B.    THE COURT SHOULD PERMIT UNITED STATES' EXPERT TESTIMONY**

19 If specialized knowledge will assist the trier-of-fact in
20 understanding the evidence or determining a fact in issue, a qualified
21 expert witness may provide opinion testimony on the issue in question.
22 Fed. R. Evid. 702. The trial court has broad discretion to admit
23 expert testimony. *See e.g.*, United States v. Alonso, 48 F.3d 1536,
24 1539 (9th Cir. 1995). An expert may base his opinion on hearsay or
25 facts not in evidence where the facts or data relied upon are of the
26 type reasonably relied upon by experts in the field. Fed. R. Evid.
27 703. In addition, an expert may provide opinion testimony even if it
28

embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

### 1. <u>**Value of the Marijuana and Distributable Quantity**</u>

The United States expects to present the testimony of an agent who will testify as an expert regarding the wholesale and street dollar value of the marijuana seized from the vehicle driven by Defendant. The expert will testify that the quantity of contraband seized from Defendant was far greater than a consumer would possess for personal use. The value testimony will focus on the wholesale and street values of the contraband, figures which have relevance to Defendant's intent to distribute. *See* <u>Davila-Escovedo</u>, 36 F.3d at 843 ("A jury may infer intent to distribute from the quantity and value of the drug possessed"). The Ninth Circuit has upheld the admissibility of expert testimony as to the wholesale and retail value of drugs. *See* <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104, 1112-1113 (9th Cir. 2002).

It is expected that the expert will base his opinions on his experience investigating these types of cases, as well as his hands-on experience interrogating drug traffickers, debriefing confidential informants and discussing intelligence information with other agents. The United States has already provided defense counsel with notice of its intent to call a value expert. Consistent with the requirements of Fed. R. Crim. P. 16, the United States has provided Defendant with the name of its expert and a summary of the projected nature and scope of, as well as the basis for, this expert's testimony in anticipation of trial. The United States has also forwarded a copy of the expert's résumé. Accordingly, no basis exists for excluding the United States'

expert testimony regarding the value of the contraband and that the amount found in the vehicle was a distributable quantity.

### 2. Structure Evidence

The United States does not intend to introduce expert testimony regarding structure in its case-in-chief. If the United States intends to present such evidence in rebuttal, it will do so consistent with United States v. Vallejo, 237 F.3d 1008, *as amended*, 246 F.3d 1150 (9th Cir. 2001) and United States v. Valencia-Amezcua, 278 F.3d 901, 909 (9th Cir. 2002). *See also* United States v. Pineda-Torres, 287 F.3d 860, 866 (9th Cir. 2002) ("We have held that limited drug structure testimony is admissible in drug importation cases when the defense opens the door. . .")

### 3. Blind Mule Testimony

The United States may, however, elicit testimony that drug traffickers generally do not entrust large quantities of drugs to unknowing couriers or "blind mules." *See* United States v. Murillo, 255 F.3d 1169, 1176-77 (9th Cir. 2001)(unknowing drug courier testimony admissible in drug possession case to attack defendant's defense that he was "simply an unknowing courier"), *overruled in part on other grounds by* United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007); United States v. Campos, 217 F.3d 707, 712 (9th Cir. 2000)(unknowing drug courier testimony was admissible in an importation case). Expert testimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters is not drug courier profile testimony. *See* United States v. Cordoba, 104 F.3d 225, 230 (9th Cir. 1997).

### 4. The Substance Seized Was Marijuana

Absent a stipulation, the United States intends to introduce the testimony of DEA Chemist Ramona Sanderson. It is expected that this chemist will testify that she performed various tests on the substance seized from the vehicle driven by Defendant. The chemist will testify, <u>inter alia</u>, that the results of these tests indicated the presence of marijuana. This chemist will base any expert opinions on her background, education, and experience, along with her knowledge and use of the accepted scientific methods used when testing unknown substances for the presence of controlled substances.

Consistent with Fed. R. Crim. P. 16, the United States has provided Defendant with the name of its DEA Chemist expert and a summary of the projected nature and scope of, as well as the bases for, this expert's testimony. The United States has forwarded a copy of the expert's resumé. Accordingly, no basis exists for excluding the United States' expert testimony that the substance seized from the vehicle was, in fact, marijuana.

## VI

### PROPOSED VOIR DIRE

1. The Court will instruct you about the law. Will you follow the law as given by the Court and disregard any idea or notion you have about what the law is or should be?

2. The Government will be calling witnesses employed by the Department of Homeland Security, Customs and Border Protection and Immigration and Customs Enforcement. Does anyone have family members or close friends who work, or have worked, for these agencies? Would that prevent you from being fair and impartial? Does anyone have any negative views of these agencies that would prevent you from being fair and impartial?

3. Has anyone had an unpleasant or negative experience with any law enforcement personnel? Would that cause you to be biased against law enforcement?

4. Has anyone ever had any disputes with any agency of the United States Government? If so, please describe.

5. Have you or any relatives or close friends ever been accused of, or charged with, a similar crime?

6. Has anyone had any training in the law? If so, please explain.

7. Will you be able to put aside any feeling of sympathy or pity for the defendant when deciding the facts of this case?

8. Does everybody understand that a defendant is entitled to a fair trial? Does everybody understand that the United States is also entitled to a fair trial?

9. Does anybody have any moral or religious reservations that might prevent him/her from standing in judgment of other human beings?

10. The defendant in this case is charged with importation of marijuana. Does anybody have strong feelings or opinions about U.S. narcotics laws that would prevent him/her from viewing the evidence impartially?

11. The law requires the government to prove its case against the defendant beyond a reasonable doubt. If you are selected, would you want the government to prove its case by a higher standard of proof, e.g. beyond any possible doubt?

12. Certain events in this case took place at the Andrade Port of Entry. Have any of you been sent to secondary inspection or had your vehicle searched at the Andrade Port or another port of entry? Have any of you had any strongly positive or strongly negative experiences at the Andrade Port or another port of entry? Do you belithis experience might prevent you from viewing the evidence in this case impartially?

13. Is anyone here involved in criminal defense work? Does anyone have any friends or family members who are involved in criminal defense work? Is anyone here involved in law enforcement? Does anyone have any friends or family members who are involved in law enforcement?

14. Regardless of any position you may have on the legalization or criminalization of marijuana, if you become a juror in this federal trial, will you be able to follow the federal law of the United States as it presently stands and as the judge instructs you regarding the criminal importation and possession of marijuana?

## VIII

## JURY INSTRUCTIONS

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

DATED: July 18, 2008.

    Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ **Caleb E. Mason**
Caleb E. Mason
Assistant United States Attorney

/s/ **Paul S. Cook**
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr1602DMS |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| MICHAEL DOUGLAS MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

**IT IS HEREBY CERTIFIED that:**

I, Caleb E. Mason, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. John Ellis, Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States
Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008.

/s/ *Caleb E. Mason*
CALEB E. MASON